624

## In re YOUKER.

### Patent Appeal No. 3511.

Court of Customs and Patent Appeals.
June 3, 1935.

Barry & Cyr, of Washington, D. C. (Robert E. Barry and Armand A. Cyr, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appeal was taken by Youker from the decision of the Board of Appeals of the United States Patent Office in so far as that decision affirmed the decision of the Examiner rejecting certain claims of his application for patent relating to oil cracking.

In his brief before us, appellant gave notice that the appeal would be dismissed as to claim 10, which is an apparatus claim, and at the hearing entered motion to dismiss. The motion will be allowed.

This leaves to be considered claims numbered, respectively, 14, 15, 16, 17, 18, 22, 23, and 24, all of which are method claims.

Number 14 is quoted as typical: "14. A process for distilling petroleum oils to produce therefrom low boiling point oils, comprising heating high boiling point oil to a cracking temperature while under super-atmospheric pressure, separating the cracked oil into a first vaporous fraction and a first liquid fraction while under super-atmospheric pressure, releasing said fractions from the last mentioned pressure, expanding the vaporous fraction substantially without loss of heat into a rectifying zone at one elevation, expanding the liquid fraction into the same rectifying zone at another elevation and thus separating the liquid fraction into a second vaporous fraction and a second liquid fraction, and flowing a stream of hydrocarbon reflux downwardly through said zone and contacting the reflux with both vaporous fractions and with the second liquid fraction to rectify said vaporous fractions and reboil the reflux."

Claims 14–18 relate to a process which includes both cracking and distilling oils, while 22–24 relate merely to distilling.

Four references were cited as follows:

Dickson, 1815127, July 21, 1931;

Seguy, 1827915, October 20, 1931;

Howard et al., 1842096, January 19, 1932;

Shevlin (British), 249604, March 29, 1926.

It appears that the patents to Seguy, Howard et al., and Dickson were not issued until after appellant had filed his application. Therefore, they are not technically a part of the prior art, but it does not appear that appellant ever sought interference with them (although there is no formal disclaimer of interference), nor does it appear that he ever attempted to antedate them. Since he has not antedated them (those applications having been filed prior to the application of appellant), they show prior invention of their subject-matter, and we must assume that appellant may not properly be held to be the first inventor of anything disclosed by them, or of anything not patentably distinct from them. In re Smith, 36 F.(2d) 522, 17 C. C. P. A. (Patents) 752.

It should be here said that while claim 10 is not for the apparatus before us, it was the claim principally discussed by the tribunals of the Patent Office, and in order clearly to understand their decisions upon the process claims it has been necessary carefully to consider what they said in rejecting it, because the process claims were rejected upon "the same references and for similar reasons."

Appellant's drawing discloses an apparatus for carrying out the claimed process in which the oil is heated to a cracking temperature in a heating coil, whence it is carried to a vaporizing tank, where it is vaporized. The vapors are carried, through a pipe line running from near the top of the vaporizing tank, into a rectifying or fractionating column, entering the latter somewhat above its center, at a point intermediate elements designated as "bubble plates." The liquid, or condensed portion of the cracked vapors, is carried from the vaporizing tank through a pipe line extending from its bottom, and adjusted so as to carry the liquid into the fractionating column at a point below the bubble plates. Both the vapor and liquid carrying pipe lines are equipped with valves at points between the vaporizing tank and the fractionating column.

Crude gasoline reflux is introduced into the top of the fractionating column by means of a pump or "any conventional methods." The vapors are passed from the top of the fractionating column by means of a pipe running through a condenser, and carried into a storage tank. The gas oil and fuel oil are conducted from the fractionating column through separate pipes into such receptacles as may be desired.

Appellant's brief points out that the "essential and major portions of applicant's process comprise five distinct steps, with the subsequent ones each dependent upon the preceding step," and recites these steps in an analysis of claim 14, supra, as follows:

"(1) Cracking the oil while under a super-atmospheric pressure.

"(2) Separating the cracked oil into a first vaporous fraction and a first liquid fraction while under super-atmospheric pressure.

"(3) Expanding the (first) vapor fraction into a rectifying zone at one elevation.

"(4) Expanding the (first) liquid fraction into the same rectifying zone at another elevation and thus separating the (first) liquid fraction into a second vaporous fraction and a second liquid fraction.

"(5) Flowing a stream of hydrocarbon reflux downwardly through said (rectifying) zone and contacting the reflux with both vaporous fractions and with the second liquid fraction to rectify said vaporous fractions and reboil the reflux."

In view of the concessions of appellant, it is not deemed necessary to recite in detail the disclosures of each reference. His brief concedes that his steps 1, 2, and 3, as above set forth, are taught by at least three of the references, viz., Seguy, Howard et al., and Shevlin.

The brief also says that the Howard et al. patent "carries out step number four through pipe 12 and valve 14," but at the oral presentation of the case before us this concession was virtually withdrawn, and argument was offered in support of the view that none of the references discloses this step.

The patent to Howard et al. discloses a system wherein there is a pressure cracking coil from whence the material is carried by means of a pipe into a vaporizing tank, designated in the drawing as a "Digestion Drum." The vapor there evolved from the liquid finds exit through a pipe leading from the top of the digestion drum, being carried into another tank which is referred to as an auxiliary drum. Near the top of the auxiliary drum and above what are called bubble plates there is a pre-heating coil for providing reflux. A trapped reflux line conducts the condensate from the bottom of the auxiliary drum back into the digestion drum. Cooling means are provided for cooling the material in the auxiliary drum as desired. From the bottom of the digestion drum there extends a pipe, referred to in the quotation from appellant's brief, supra, by the numeral 12. This pipe extends to what is called a "separator," and is equipped with a valve, mentioned as "14" in the said quotation. At a point between the valve and the separator two additional pipes are provided as branches of "12," so that three lines, designated a, b, and c, lead into the separator. Another pipe, likewise equipped with a valve, which valve is also designated by the numeral 14, leads from the auxiliary drum to, and is connected with, branches a and b of the pipe 12 at a point between the first-mentioned valve and the separator, this pipe being designated in the

drawing by the numeral 13. The liquid element passes from the digestion drum through pipe 12, while the vapor element passes from the auxiliary drum through pipe 13, so that the liquid and vapor elements may enter the separator "in intimate contact," the respective valves having functioned to produce a "substantial reduction of pressure." The separator is provided with fractionation plates and has a pipe from its bottom for the withdrawal of unvaporized tar. A cooling coil is placed above the plates which condenses the vapor, the condensate being caught in a suitable vessel and removed through a pipe.

We think it quite doubtful, to say the least, whether any teaching of the Howard et al. patent completely embraces appellant's fourth step above recited, and it is to be remembered that the tribunals of the Patent Office did not so hold. The rejection by the Examiner was based upon Howard et al., in view of Dickson, and the Board of Appeals, after discussion of certain details, said " * * * taking claim 14 as an example, it seems apparent that the patent to Dickson, for instance, would perform the steps of the claim completely."

It is deemed unnecessary to recite all details of the Dickson disclosure. The here material features of the combination are a vaporizer (which receives liquid from a heating coil) from which vaporizer vapors are transferred through a line to the middle of a column containing a series of bubble plates, the residual oil passing through another line to a point in the same column below the bubble plates. Means are provided for the introduction of cooling oil into the top of the bubble plate column for refluxing purposes, and several sets of pipes, with appropriate appurtenances, are provided for withdrawing the condensate, and another line for withdrawing the residuum remaining after the operation which takes place in said bubble plate column.

In the Dickson patent neither the vapor transmission line nor the residual oil transmission line leading from the vaporizing tank to the bubble plate column is equipped with a valve. Each of appellant's corresponding lines is so equipped, and the teaching of the specification is that these valves will be so controlled that a pressure preferably between 200 lbs. and 450 lbs. per square inch will be obtained in the vaporizing chamber, so that **vapors will flow** from pressure through the transmission pipe into the bubble plate column. There is no teaching that by the use of the said valves the liquid element will retain sufficient heat to volatize the lighter fractions thereof, and reboil the reflux, but appellant argues that there is such a function.

It has been pointed out, supra, that in the Howard et al. patent, the residual oil transmission line leading from the digestion, or primary vaporizing, drum to the separator, and the vapor transmission line leading from the auxiliary drum to the separator are both equipped with valves by the regulation of which "reduction of pressure" is obtained.

The tribunals of the Patent Office agreed in the holding that equipping pipes like the aforementioned transmission lines of Dickson with valves like the aforementioned valves of Howard et al. would result in a structure substantially identical with that of appellant, so far as this particular feature is concerned, and of necessity, in an identical process, and they were of the opinion that so to combine them would require nothing more than nonpatentable mechanical skill.

In this opinion we agree. All the parties worked in the same art. The only distinction, upon the here material feature, between the Howard et al. patent and appellant's process is that Howard et al., by means of valves, controls pressure which, in case of the liquid, is applied to that going from the vaporizer to a separator, and, in case of the vapor, that going from a second vaporizer to the same separator, while appellant, by use of similar valves, controls pressure upon both liquid and vapor as they pass through different lines from his first to his second vaporizing chamber.

The essence of appellant's fifth step is, so far as here material, that of supplying hydrocarbon reflux to two vaporous fractions for the purpose of rectifying them and reboiling the reflux. It is old, as shown by different of the cited references, to supply reflux material for rectifying one vaporous fraction and reboiling the reflux, and we can discern nothing inventive in supplying it, in the manner outlined by appellant, for operation upon two fractions.

We have carefully considered the case of Skelly Oil Co. v. Universal Oil Products Co. (C. C. A.) 31 F.(2d) 427, which appellant cited in oral argument and upon which he strongly relies. That was an infringement proceeding in which the Unit-

ed States Circuit Court of Appeals of the Third Circuit affirmed a judgment of the United States District Court for Delaware, 20 F.(2d) 995; 23 F.(2d) 111, holding certain process claims of a patent, issued to one M. J. Trumble, relating to the art of refining petroleum, to have been infringed.

It is our deduction from the court's opinion in that case, taken as a whole, that, while the step taken by Trumble was comparatively simple, it was nevertheless a step distinctly in advance of the definite teachings of any patent relied upon for defense, and, furthermore, we understand the opinion to mean that no teachings of prior art were shown from which the court was able reasonably to conclude that a combination of elements shown in such art would lead to the result which Trumble obtained.

The case at bar is different. The prior patents cited against appellant show combinations of certain elements. Appellant has taken those same elements and combined them in a relationship quite analogous to their relationship in the patents, thereby obtaining a result which also is partially analogous. It seems to us that such additional results as he may have obtained were rendered obvious by the definite teachings of inventors who, so far as this record shows, preceded him in the field.

The appeal is dismissed as to claim 10. As to all other claims, the decision of the Board of Appeals is affirmed.

Affirmed.